1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES C. ENGEL,<br><br>                              Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>THE NAVY,<br><br>                              Defendant. | Case No.:  19-CV-2077-CAB-KSC<br><br>**ORDER ON MOTIONS FOR<br>SUMMARY JUDGMENT**<br><br>**[Doc. Nos. 29, 30]** |

       This matter is before the Court on the parties' cross-motions for summary judgment. [Doc. Nos. 29, 30.]  These motions have been fully briefed, and the Court deems each suitable for submission without oral argument. *See* CivLR 7.1(d)(1).  For the reasons stated below, Plaintiff's motion is denied, and Defendant's motion is granted.

**I.      Statement of Facts**

**A. The Accident**

       The underlying facts in this case are undisputed.  [Doc. No. 28.]  On May 23, 2012, Plaintiff James Engel was a passenger in a van owned by VPSI and driven by Greg Binde when that van collided with a trailer owned by Mar Con Products.  [*Id.* ¶ 1.]  Engel was seriously injured in the accident, and as a retired U.S. Navy veteran, his medical expenses stemming from the accident were paid by TRICARE and/or provided through government-

owned medical facilities.  [*Id.* ¶ 3.]  As of April 7, 2016, Engel's medical expenses totaled $436,075.37.  [*Id.*]

### B.  The Underlying Lawsuit

On October 10, 2012, Engel sued Binde, VPSI, and Mar Con Products (among other defendants not relevant to this case) in San Diego County Superior Court to recover his damages stemming from the accident.  [*Id.* ¶ 4.]  Engel's lawsuit was consolidated with several other lawsuits arising out of the accident (collectively, the "Underlying Lawsuit"). On April 25, 2013, the United States Department of the Navy (the "Navy") asked Anthony J. Klein, who represented Engel in the Underlying Lawsuit, to assert the Navy's interest in recovering Engel's medical expenses (pursuant to the Medical Care Recovery Act, 42 U.S.C. §§ 2651-2653, and the Third Party Payers Act, 10 U.S.C. § 1095) as an item of special damages in Engel's suit.  [*Id.* ¶ 6.]  In exchange, the Navy agreed to provide "available medical records from military treatment facilities and corresponding billing information," and to "provide access to locally available Navy medical officers who have treated or are treating the injured party, without costs."  [Doc. Nos. 28-1, 28-2.]  Klein and the Navy signed an "Agreement to Protect Government's Interest" (hereinafter "Protection Agreement") reflecting the Navy's proposal in May 2013.  [Doc. No. 28 ¶ 7.]

Engel and his co-plaintiffs[1] settled the Underlying Lawsuit as to their claims against Mar Con Products in May 2015 for $2,000,000.  [*Id.* ¶¶ 9-11.]  Klein subsequently offered the Navy's Medical Care Recovery Unit ("MCRU") a partial payment of $150,000 toward Engel's medical expenses from Engel's expected settlement proceeds, and the MCRU accepted the offer.  [*Id.*]  Engel and his co-plaintiffs participated in arbitration to distribute the settlement proceeds among the co-plaintiffs.  On October 15, 2015, Engel and his wife were awarded 48%, or $960,000, of the $2 million settlement by the arbitrator.  [*Id.* ¶ 12.] Of the $960,000, Engel's share was $832,224, with the remainder going to his wife.  [*Id.*]

---

[1] Engel's co-plaintiffs in the consolidated action include his wife, Joan Engel; Mark Vezzani; Lincoln Westerlund; David Belger; Pete Negrete; and Jeffrey Deshazer.

From these proceeds, Klein sent the MCRU a check for $150,000 [*Id.* ¶ 13] and collected $577,686.68 in fees and costs for his law firm.  [*Id.* ¶ 14.]

In December 2015, Engel and his wife settled the Underlying Lawsuit as to their claims against VPSI for $150,000, of which Engel's share was $130,035 with the remainder going to his wife.  [*Id.* ¶ 15.]  Klein then offered the MCRU a partial payment of $20,000 toward Engel's medical expenses, and the MCRU accepted the offer on February 4, 2016. [*Id.* ¶¶ 15-16.]  Klein's firm collected $60,263.74 in fees and costs from the $150,000 settlement payment and sent the MCRU a check for $20,000.  [*Id.* ¶¶ 17-18.]

The Underlying Lawsuit proceeded to trial by referee against Greg Binde in May 2016.  [*Id.* ¶ 19.]  The presiding referee found that Binde was 100% responsible for Engel's harm and awarded Engel total damages of $9,543,163, including $435,379 in past medical expenses, $813,943 in future medical expenses, and $7,900,000 in past and future noneconomic losses.  [*Id.*; Doc. No. 29-6 at 3-4.]  The referee credited Binde $962,259 for the settlement proceeds Engel had already received and ordered that Binde pay Engel the remaining damages in the amount of $8,580,904.  [Doc. No. 29-6 at 7.]

### C. Negotiations Between Engel and MCRU

On June 9, 2016, Klein emailed the MCRU to explain how much of the verdict Engel was likely to receive from Progressive and Zurich insurance policies covering Binde (the driver of the van and a defendant in the Underlying Lawsuit).  [*Id.* ¶ 21.]  Klein also indicated that there was a possibility of recovery from an excess insurance policy covering Binde through Starr Indemnity & Liability Company ("SILC").  [*Id.* ¶ 15.]  Klein's email stated:

> Hi Leticia.  As I stated over the phone I recently successfully tried [Engel's] case with my Partner, Ryan Bright.  We were successful in obtaining a $9.5M verdict for [Engel].  Unfortunately there is only $1.3M insurance for all Plaintiffs. [Engel's] share is 54%.  So he will receive about $700,000 or less than 10% of his verdict.  He will pay 40% attorney fees and costs of about $25,000.  That is the good and bad news.  In addition, there is the possibility of collecting all or a portion of a $5M excess insurance policy.  However, the Insurance Company has filed a Declaratory Relief suit in Federal Court in Los

1
2
3
4
5
6

> Angeles and alleges they have no coverage responsibility.  We thin [sic] their position is incorrect, but the decision will be made by a Federal Judge.  Based on the above I propose the following.  Rather than going back and forth on the lien amount, I would agree to pay 25% of the remaining lien out of [Engel's] portion of this recovery. If we lose the Excess Insurance suit then the balance of the lien or 75% of remaining portion would be waived by the Navy. If on the other hand we are successful and collect Jim's share of the $5M (approx…$2.5M ) then we would pay off the lien. Let me know what Navy is willing to do.

7
8
9

[Doc. No. 28-3 at 2.]  At the time, Engel had repaid $170,000 of the $436,075.37 the Navy had spent for Engel's medical care, resulting in a remaining balance of $266,075.37. Therefore, 25% of the remaining balance was $66,518.84.  [Doc. No. 28 ¶ 23.]

10
11
12

On June 29, 2016, Engel received a settlement distribution of $616,762.36 from the Progressive and Zurich insurance policies covering Greg Binde's negligence.  [*Id.* ¶ 22.] Klein's firm collected $261,018.16 in fees and costs from the settlement distribution.  [*Id.*]

13
14
15
16
17
18
19
20
21

On August 31, 2016, Klein emailed David Swanson, the head of MCRU, to follow up on his June 9, 2016 proposal: "[I]f we are successful in our suit against the Excess Insurer, I have agreed to repay the remaining balance of the lien. I would very much appreciate a response." [Doc. No. 28-4 at 2.]  On September 29, 2016, Leticia Torres from the MCRU emailed Klein stating: "Good News!  I received a response from DC approving the partial compromise of $66,518.84.  Please note, our case will remain open until the final settlement has been reached."  [Doc. No. 28 ¶ 25; Doc. No. 30-9.]  That same day, Klein forwarded Torres' email to Engel and others with the message: "Great news.  Have accounting cut check for lien and remit balance to [Engel]." [Doc. No. 29-11 at 2.]

22
23
24
25
26

On October 3, 2016, Klein sent the MCRU a check for $66,518.84 accompanied by a letter stating that the amount "represents partial payment of the lien." [Doc. No. 28 ¶ 26.] On October 20, 2016, the MCRU sent Klein a letter confirming that the total payment to date was $236,518.84, and that the outstanding balance owed to the Navy was $199,556.53. [*Id.* ¶ 27.]

27
28

19-CV-2077-CAB-KSC

1
2
3
4
5
6
7

In September 2018, Engel and his co-plaintiffs settled with SILC for $5 million. [*Id.* ¶ 28.] Engel's share of the settlement was $2,412,500, from which Klein's firm collected $1,092,777.74 in fees and costs. [*Id.* ¶ 34.] On September 20, 2018, Klein emailed the MCRU notifying them of the settlement and stating that he would hold $199,556.53 from Engel's share in trust "without agreeing to any specific amount or reduction." [*Id.* ¶ 30.] Klein also stated, "When we have reached an agreement as to the amount of final agreed upon lien, we will immediately send you a check for that amount." [*Id.*]

8
9
10
11
12
13

From September 2018 through July 2019, Klein and the MCRU corresponded regarding a potential compromise or waiver of the Navy's claim to the funds being held in trust. [*Id.* ¶¶ 31-38.] Klein repeatedly requested that the MCRU agree to reduce their lien, but the MCRU refused to change its position that the Navy was entitled to its claim in full. On October 30, 2019, Engel filed the present action seeking a declaration of entitlement to and distribution of the $199,556.53 held in trust.

14
15
16
17
18
19

In sum, Engel has recovered $3,991,521.36 in damages to date (approximately 41.8% of the total damages awarded to Engel at the May 2016 trial), less $1,991,746.32 in fees and costs paid to Klein's firm, for a net recovery of $1,999,775.04 (approximately 21% of the total damages awarded at trial). The Navy has recovered $236,518.84 to date as reimbursement for Engel's medical costs (approximately 54.2% of the total medical expenses paid).

20
21
22
23
24

Engel filed the First Amended Complaint ("FAC") on January 31, 2020, asserting two causes of action for: (1) review of the Navy's actions under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and (2) declaratory relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. [Doc. No. 10.] The Navy filed its Answer and Amended Counterclaim against Engel on February 14, 2020, asserting two

25
26
27
28

1  counterclaims for: (1) unjust enrichment, and (2) declaratory relief under the DJA.[2]  [Doc.

2  No. 13.]  The parties filed cross-motions for summary judgment, and both motions are now

3  ripe for resolution.

4        **II.**     **Legal Standard**

5        The familiar summary judgment standard applies here.  Under Federal Rule of Civil

6  Procedure 56, the court shall grant summary judgment "if the movant shows that there is

7  no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

8  of law."  FED. R. CIV. P. 56(a).  When ruling on a summary judgment motion, the court

9  must view all inferences drawn from the underlying facts in the light most favorable to the

10 nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

11 (1986).

12       The initial burden of establishing the absence of a genuine issue of material fact falls

13 on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the

14 moving party can demonstrate that its opponent has not made a sufficient showing on an

15 essential element of his case, the burden shifts to the opposing party to set forth facts

16 showing that a genuine issue of disputed fact remains.  *Id.* at 324.  To avoid summary

17 judgment, disputes must be both 1) material, meaning concerning facts that are relevant

18 and necessary and that might affect the outcome of the action under governing law, and 2)

19 genuine, meaning the evidence must be such that a reasonable judge or jury could return a

20 verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

21 (1986); *see also Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) ("Summary

22 judgment is appropriate only if, taking the evidence and all reasonable inferences drawn

23

24 --------

25 [2] On June 22, 2020, the Court granted the parties' joint motion allowing the Navy to dismiss with prejudice
those portions of its First Amended Counterclaim ("FACC") seeking damages for future care costs
26 through TRICARE and past or future care costs through Medicare. [Doc. No. 22.]  As such, the FACC
now only seeks damages for the cost of past medical care provided to Engel through TRICARE.  In its
27 motion for summary judgment, the Navy contends that it is not seeking recovery of the cost of Engel's
care from the time of the May 2016 trial until June 8, 2020 (approximately $19,862.03). [Doc. No. 30 at
28 5 n.5.]  Thus, only the $199,556.53 held in Klein's client trust account is in dispute here.

1   therefrom in the light most favorable to the non-moving party, there are no genuine issues

2   of material fact and the moving party is entitled to judgment as a matter of law."). "Factual

3   disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at

4   248; *see also T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630

5   (9th Cir. 1987) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of

6   summary judgment.").

7        **III.    Discussion**

8          Under the Medical Care Recovery Act, 42 U.S.C. § 2651 ("MCRA"), the United

9   States has the right to recover from third party tortfeasors the costs of medical services

10   rendered to injured veterans.[3]   The Act provides several methods by which the United

11   States may enforce its substantive right.   Under section 2651(d), the Government may

12   either intervene in an action brought by the injured party against the tortfeasor, or institute

13   an independent action against the tortfeasor if the injured party has not sued within six

14   months of beginning medical care.  42 U.S.C. § 2651(d).  Alternatively, the United States

15   may consent to the injured party's attorney representing its interests in the injured party's

16   suit, so long as the plaintiff's complaint demands damages for the value of medical services

17   provided "for the sole use and benefit of the United States in accordance with [the MCRA],

18   with the consent of the United States." *See Cockerham v. Garvin*, 768 F.2d 784, 786 (6th

19   Cir. 1985).

20          Pursuant to the Protection Agreement between Klein and the Navy, Klein agreed to

21   assert the Navy's interest in recovering Engel's medical expenses in the Underlying

22

23   ───────────────

24   [3] The MCRA provides in part: "In any case in which the United States is authorized or required by law to
    furnish or pay for hospital, medical, surgical, or dental care and treatment . . . to a person who is injured.
25   . . under circumstances creating a tort liability upon some third person . . . to pay damages therefor, the
    United States shall have a right to recover (independent of the rights of the injured or diseased person)
26   from said third person, or that person's insurer, the reasonable value of the care and treatment so furnished,
    to be furnished, paid for, or to be paid for and shall, as to this right be subrogated to any right or claim
27   that the injured or diseased person . . . has against such third person to the extent of the reasonable value
    of the care and treatment so furnished, to be furnished, paid for, or to be paid for." 42 U.S.C. § 2651(a).
28

1   Lawsuit.  [Doc. No. 28 ¶ 7.]  Although Engel argues that a conflict prevented Klein from

2   binding Engel to the Protection Agreement [Doc. No. 29-1 at 17], he does not dispute that

3   the Navy is entitled to at least some portion of the damages he recovered in the Underlying

4   Lawsuit for his past medical expenses under the MCRA.[4]  [*See* Doc. No. 29-1 at 11.]  The

5   only dispute is the amount of the Navy's share of Engel's recovery.

6          The Navy has incurred $436,075.37 for Engel's medical care, and it has recovered

7   $236,518.84 of that amount from the amounts Engel collected in the Underlying Lawsuit,

8   leaving a balance of $199,556.52.  [Doc. No. 28 ¶¶ 3, 27.]  The Navy contends that it is

9   entitled to recover the cost of Engel's medical care in full pursuant to an agreement made

10  between the parties in September 2016.  Engel, on the other hand, disputes the formation

11  of any contract and argues that the Navy's recovery should be "equitably apportioned"

12  because Engel did not recover the full judgment awarded to him at trial.  [Doc. No. 29-1 at

13  8-11.]  Engel suggests that the Navy's claim should be limited to a "prorated share of its

14  damages equal to that portion of its damages that Engel actually recovered."  [Doc. No. 35

15  at 2.]  Engel further argues that if the damages are equitably apportioned, Defendant has

16  been overpaid for its fair share and should be ordered to pay Engel restitution in the amount

17  of overpayment.  [*Id.* at 2-3.]

18         The Court finds that the parties entered into a valid agreement to condition the

19  Navy's full reimbursement on the outcome of Engel's suit against SILC.  On June 9, 2016,

20  Klein made an offer to the MCRU that Engel would immediately pay $66,518.84 if it

21  agreed to condition payment of the remaining balance ($199,556.53) on whether Engel was

22  successful in his suit against SILC.  [Doc. No. 28 ¶ 21.]  On September 29, 2016, a

---

23

24

25  [4] The Navy did not enforce its substantive rights under the MCRA by joining or intervening in the
    Underlying Lawsuit.  Nor did it institute its own action against the parties liable for Engel's harm.  42
26  U.S.C. § 2651(d).  The only remaining method for the Navy to enforce its claim is by agreeing with
    Engel's attorney to have its interests represented in Engel's suit.  Engel agrees that the Navy has a valid
27  claim under the MCRA to at least part of his damages, which negates his contention that there was no
    valid agreement for his attorney to represent the Navy's interests.  Therefore, the Court need not further
28  address Engel's arguments regarding the validity of the Protection Agreement.

1  representative from the MCRU accepted the offer, stating that the MCRU "approv[es] the

2  partial compromise of $66,518.84.  Please note, our case will remain open until the final

3  settlement has been reached."  [*Id.* ¶ 25.]  Engel argues that no agreement was reached

4  because Defendant did not explicitly acknowledge the condition that the remaining balance

5  would be waived if Engel lost the excess insurance suit.  [Doc. No. 29-1 at 12.]  However,

6  while a valid acceptance must be absolute and unqualified, CAL. CIV. CODE § 1585, it is

7  not essential that the acceptance repeat the identical language employed in the offer.

8  *Schreiber v. Hooker*, 251 P. 2d 55, 58 (Cal. Dist. Ct. App. 1952).  Any form of expression

9  showing a clear intention to accept on the terms proposed is sufficient if coupled with no

10  new conditions.  *See Beatty v. Oakland Sheet Metal Supply Co.*, 244 P. 2d 25, 30 (Cal. Dist.

11  Ct. App. 1952); 14 CAL. JUR. 3D *Contracts* § 90, Westlaw (database updated Feb. 2021).

12  The MCRU's response that it "approv[ed] the partial compromise" reflects a clear intention

13  to accept Klein's proposed compromise—that Engel would immediately pay $66,518.84 if

14  the Navy agreed to gamble its remaining claim on the outcome of Engel's excess insurance

15  suit.

16  Further, Klein's subsequent conduct indicates that he understood the MCRU's

17  response to be an acceptance of his proposal.  Soon after receiving the email from Leticia

18  Torres, Klein forwarded it to Engel and others with the message: "Great news.  Have

19  accounting cut check for lien and remit balance to [Engel]."  [Doc. No. 29-11 at 2.]  Klein's

20  statement that the response was "great news" objectively reflects an understanding that his

21  offer had been accepted.  Further, four days later, Klein sent the MCRU a check for

22  $66,518.84 with a letter confirming that the payment "represents partial payment of the

23  lien."  [Doc. No. 28 ¶ 26.]  Klein began performing under the terms of the parties'

24  agreement when he sent the payment of $66,518.84.  Had Klein believed a deal had not

25  been entered, he would have no incentive to send such a payment to the Navy at that time.

26  Finally, the Navy sent Klein a letter confirming receipt of the partial payment, which shows

27  that it too understood that an agreement had been reached.  *See* CAL. CIV. CODE § 1584

28  ("[T]he acceptance of the consideration offered with a proposal[] is an acceptance of the

1 proposal."); *Brinton v. Bankers Pension Servs., Inc.*, 76 Cal. App. 4th 2d 550, 560 (1999)

2 ("The law imputes to a person an intention which corresponds to the reasonable meaning

3 of his or her words and acts."); *Ruiz v. California State Auto. Ass'n Inter-Ins. Bureau*, 165

4 Cal. Rptr. 3d 896, 900 (2013) ("The question is what the parties' objective manifestations

5 of agreement . . . would lead a reasonable person to believe." (internal citations omitted)).

6        Engel claims that despite the deal his attorney reached with the Navy, the Court

7 should apply an equitable theory of relief to apportion the damages held in Klein's trust

8 account.  However, equity "precludes the maintenance of an action for a wrong by one who

9 has consented to the act which has occasioned his loss."  *Pinney & Topliff v. Chrysler

10 Corp.*, 176 F. Supp. 801, 810 (S.D. Cal. 1959); *see also Comet Theater Enters., Inc. v.

11 Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952) ("There is no equitable reason for invoking

12 restitution when the plaintiff gets the exchange which he expected.").  Under principles of

13 equity, Engel received the benefit of his bargain and has presented no basis for avoiding

14 that bargain now.

15        Engel, through his attorney, made a proposal that could have resulted in the Navy

16 waiving 75% of its remaining claim for reimbursement.  Engel asked the Navy to wager

17 nearly $200,000 on the outcome of his excess insurance suit, which the Navy agreed to.

18 Only now, after that bet did not turn out in his favor, does Engel claim that no deal was

19 reached.  Further, Engel knew what his potential recovery from the excess insurance suit

20 would be at the time his attorney made the compromise offer.  Klein expected Engel's

21 recovery to be approximately $2.5 million, and Engel did ultimately recover $2,412,500.

22 [Doc. No. 28-3 at 2 ("If on the other hand we are successful and collect Jim's share of the

23 $5M ( approx…$2.5M )…"); Doc. No. 28 ¶ 34.]  The record shows that Engel not only

24 consented to the agreement reached between the parties, but in fact proposed it while fully

25 aware of his likely recovery and what was at stake.  In other words, Engel got the exact

26 "exchange which he expected."  *See Comet Theater*, 195 F.2d at 83.  Under principles of

27 equity, Engel is not entitled to now seek a modification or rescission of the deal he

28 proposed.

19-CV-2077-CAB-KSC

1    Accordingly, the Court finds that the parties entered into a valid agreement to

2  condition full reimbursement of the amount the Navy incurred for Engel's care on the

3  outcome of Engel's excess insurance suit.  Because Engel was successful in recovering

4  against the excess insurer, Defendant is entitled to the $199,556.53 held in Klein's client

5  trust account according to the terms of the parties' agreement.  Further, under general

6  principles of equity, Engel has no valid claim to an "equitable apportionment" of these

7  funds.

8    **IV.    Conclusion**

9    For the reasons set forth above, Defendant's motion for summary judgment is

10 **GRANTED**, and Engel's motion for summary judgment is **DENIED**.  It is further

11 **ORDERED** that the Clerk of Court shall enter **JUDGMENT** in favor of Defendant and

12 against Engel as follows:

13    1. Defendant United States Department of the Navy is entitled to recover the

14        remaining $199,556.53 owed for the costs expended for Engel's medical care;

15        and,

16    2. The $199,556.53 being held in trust by Attorney Anthony J. Klein belongs to

17        Defendant and shall be immediately released to Defendant through its counsel.

18    It is **SO ORDERED.**

19 Dated:  March 18, 2021

20

21                                    Hon. Cathy Ann Bencivengo
                                     United States District Judge

22

23

24

25

26

27

28

19-CV-2077-CAB-KSC